**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**EASTON BECKFORD,**

                               **Plaintiff,**                   06-CV-00561(Sr)

**v.**

**NEW YORK STATE OFFICE**
**OF MENTAL HEALTH, et al.,**

                               **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #15.


Currently before the Court is the defendants' motion for summary judgment.  Dkt. #24.  Plaintiff commenced this *pro se* action on or about August 23, 2006 pursuant to  42 U.S.C. § 1983.  Dkt. #1.  Plaintiff's complaint alleges violations of the Americans with Disabilities Act, Section 504 of the Federal Rehabilitation Act of 1973 and various violations of the Eighth Amendment to the United States Constitution. At all times relevant to the allegations in plaintiff's complaint, plaintiff was incarcerated at the Five Points Correctional Facility ("Five Points").  Specifically, the allegations in plaintiff's complaint can be sub-divided into the following four claims: (1) defendants, the New York State Office of Mental Health ("OMH"), New York State Department of Correctional Services ("DOCS"), and individual defendants, Carpinello, Sawyer,

Papontos, Marrone, Goodman, Evans, Duke, Fischer, DeVito, Goord, Poole,

Weingartner and Gregoire, failed to provide proper mental health treatment to plaintiff;

(2) plaintiff was denied exercise by DOCS staff; (3) plaintiff's water and electricity was

shut off by defendants McPherson and Thomas for 22 hours; and, (4) plaintiff's rights

pursuant to the Eighth Amendment, the Americans with Disabilities Act and the

Rehabilitation Act of 1973 were violated because, plaintiff alleges that Five Points is not

wheelchair accessible.  For the following reasons, defendants' motion for summary

judgment is granted.


## PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action on or about August

23, 2006 against "OMH, Sharon Carpinello, Danald [sic] Sawyer, David Peppell, Joanna

Papontos, Joseph Marrone, William Goodman, Deborah Evans, Heather Duke, Viktoria

Fisher, Anthony DeVitto, DOCS, Glenn S. Goord, Thomas M. Poole, Larry Weingartner,

J. Peter Gregoire, D. McPherson, and S. Thomas."  Dkt. #1.  In addition to plaintiff's

request for compensatory and punitive damages, plaintiff's complaint also sought a

temporary restraining order, as well as preliminary and permanent injunctive relief.  *Id*.

By Decision and Order dated September 19, 2006, United States District Judge John T.

Curtin, directed that the complaint be treated as both a complaint and a motion for a

temporary restraining order and preliminary injunction, ordered that the motion for a

temporary restraining order be denied, and further ordered that several of the claims be

dismissed pursuant to Title 28, United States Code, Sections 1915(e)(2)(B) and 1915A.

Dkt. #3.  Thereafter, plaintiff filed memoranda of law in support of his request for a

preliminary injunction (Dkt. ## 7 and 18) and defendants' filed their opposition to plaintiff's request for a preliminary injunction (Dkt. ##10-13). In lieu of filing an answer to plaintiff's complaint, defendants timely filed the instant motion for summary judgment on December 14, 2006. Dkt. #24. Plaintiff filed his opposition to the instant motion for summary judgment on or about February 28, 2007. Dkt. ## 30-34. As set forth in a March 25, 2009 letter to this Court from counsel for the defendants, since the filing of his opposition to the instant motion for summary judgment, the plaintiff was deported from the United States to Jamaica and is barred from returning to the United States.

## FACTUAL BACKGROUND

**Mental Health Treatment**

At the outset, the Court notes that plaintiff is confined to a wheelchair as a result of a head injury sustained in 1984 after he jumped out of a four story building. Dkt. #1, ¶ 2. On or about September 29, 2005, plaintiff was transferred to Five Points from the Central New York Psychiatric Center ("CNYPC"). Dkt. #25, ¶ 3. Patients at the CNYPC receive that highest level and most intense care provided by the OMH to inmates in the custody of DOCS. *Id*. at ¶ 4. Indeed, only those inmates with acute psychiatric symptoms who are unable to function in a correctional facility are admitted and treated at the CNYPC. *Id*. at ¶¶ 4-5. Plaintiff alleges that on or about September 16, 2004, he was admitted to the CNYPC. Dkt. #1, ¶ 54. In or about September 2005, once plaintiff's psychiatric symptoms had subsided and it was concluded that he would be able to appropriately function in a correctional facility, plaintiff was discharged from

CNYPC.  Dkt. #1, ¶ 55; Dkt. #25, ¶ 6.  Plaintiff alleges that, "[o]n September 29, 2005,

plaintiff was discharged from CNYPC and returned to Five Points with a discharge plan

and explicit instruction [sic] from OMH Dr. Barboza and Dr. Kaplan that plaintiff should,

among other [sic], returned [sic] to an OMH level one DOCS facility with direct

admission to an ICP unit."  Dkt. #1, ¶ 55.  Indeed, defendants submit that in his

discharge summary completed by the staff at the CNYPC on September 23, 2005, it

was recommended that plaintiff go to a Level I mental health service facility.  Dkt. #25,

¶ 7.  In addition, it was further requested that plaintiff be placed in the Intermediate

Care Program ("ICP").  *Id*.  As explained by the defendants, the ICP is a "progressive

program that helps inmates with mental illness learn how to manage symptoms of their

illness and gradually progress to the general population."  *Id*. at ¶ 8.


        Prior to plaintiff's release from CNYPC, staff from Five Points and staff

from CNYPC participated in a telephone conference, wherein plaintiff's discharge plan

was reviewed and discussed.  Dkt. #25, ¶¶ 9-10.  Specifically, from Five Points, both

DOCS and OMH personnel participated in the call, including the ICP Coordinator, a

DOCS corrections counselor, a DOCS corrections sergeant, the OMH nurse

administrator, the staff psychiatrist and the OMH Unit Chief.  *Id*. at ¶ 9.  During that

telephone conference, based on plaintiff's past history with ICP and plaintiff's

"functioning level," it was agreed that the ICP was not a realistic option for plaintiff.  *Id*.

at ¶ 10.  Specifically, prior to this most recent admission to the CNYPC, plaintiff had

been in the ICP at Five Points and ultimately, refused to be involved in the programs

outside of the unit in the general population and eventually, plaintiff refused to

-4-

participate in any of the ICP activities. *Id*. at ¶ 11. Indeed, "[c]ompared to the other inmates in ICP, plaintiff functioned at a much higher level, with episodic decompensations." *Id*. at ¶ 12. Moreover, "[p]laintiff's functioning level was found to be not compatible with the ICP which was developed for inmates who have a greater degree of long term deficits." *Id*. at ¶ 13. From a clinical perspective, it was agreed that the ICP was not the appropriate fit for plaintiff; therefore, plaintiff was placed in general population. *Id*. at ¶¶ 13-14.

Five Points is a Level I mental health service facility based on its level of care and OMH staff assigned. The Five Points general population is considered to be Level II because, as a general matter, the inmates are double bunked. Dkt. #25, ¶ 16. Plaintiff alleges that despite his level one designation, he has and continues to be housed in the general population in a double bunk cell without access to mental health care or programs. Dkt. #1, ¶ 58. Contrary to plaintiff's allegations, due to his mental health status, plaintiff has not been "double bunked" since his September 2005 return to Five Points. Dkt. #25, ¶ 17. Although plaintiff has been housed in a cell capable of accommodating a double bunk, plaintiff does not have a cellmate. Dkt. #13, ¶ 9. Plaintiff's mental health diagnosis is "Major Depression, Recurrent, Mild, with a Borderline Personality Disorder which exhibits itself by delusional thinking, acts of self harm, and verbal attacks on others whom the plaintiff perceives as unfair." Dkt. #25, ¶ 18. In sharp contrast to plaintiff's allegations, since his return to Five Points, he has received intensive mental health treatment. *Id*. at ¶ 19. In addition to receiving psychotropic medication to control his symptoms, plaintiff receives one-on-one therapy

from a psychiatrist twice a week.  *Id*. at ¶ 20.  Moreover, plaintiff is seen daily by the OMH nursing staff when medications are distributed.  *Id*. at ¶ 21.

When plaintiff's symptoms require acute care, plaintiff has been placed in the Residential Crisis Treatment Unit ("RCTU") at Five Points.  *Id*. at ¶ 22.  The RCTU is a psychiatric housing unit which offers several cells that are separate from the remaining population.  *Id*.  While in the RCTU, patients can be observed 24 hours a day and are afforded more intense psychiatric services which include daily evaluations by the psychiatrist and primary therapist.  *Id*. at ¶ 23.  In the event that plaintiff's mental health condition severely deteriorated, plaintiff could be sent to the CNYPC for more intensive care.  *Id*. at ¶ 24.  However, since plaintiff's return to Five Points in or about September 2005, such intensive care has not been required.  *Id*.

**Wheelchair Accessibility and Exercise**

Plaintiff alleges that in general population, the cells are not built to accommodate the "physical need [sic] of prisoners with disabilities."  Dkt. #1, ¶ 83. Specifically, plaintiff alleges that "the cell gates are barely wide enough to allow access for the plaintiff's wheelchair" and that "plaintiff continue [sic] to suffer grate [sic] pane [sic] trying to navigate the wheelchair over the 1½ inch lift."  *Id*. at ¶ 84.  Specifically, plaintiff claims that he cannot manipulate his wheelchair over a 1½ inch lift that separates his cell from the adjoining recreation pen and therefore, he claims he is being denied exercise.  Moreover, plaintiff alleges that rather than removing the 1½ inch lift,

defendants Weingartner and Gregoire advised plaintiff to enter and leave the cell by rolling his wheelchair backwards through the cell door. *Id*. at ¶ 85. Plaintiff further claims that his March 15, 2006 request for a reasonable accommodation, *to wit*, to have the 1½ inch lift removed from the cell entrance or to be moved to a cell on the first floor, was denied. *Id*. at ¶ 86. Similarly, plaintiff alleges that his grievance was denied by both the IGRC and CORC with the instruction that plaintiff should get pain medication from the Medical Department. *Id*.

Five Points was opened in 2000 as a new facility and in compliance with all applicable building codes including the Americans with Disabilities Act Accessibility Guidelines. Dkt. #25, ¶ 25 (number one)[1]. As an ADA compliant facility, there are cells designed and designated for wheelchair accessibility. Dkt. #25, ¶ 25 (number two). Indeed, the wheelchair accessible cells have wider doors for wheelchairs, modified showers in the cell for handicap accessibility, a wheelchair accessible desk and cabinet space and wheelchair accessible toilets and sinks. *Id*. at ¶ 26. At the time of the filing of the instant motion, the plaintiff was being housed in a wheelchair accessible cell. *Id*. at ¶ 27. Facility wide, a wheelchair bound individual has access to all appropriate and approved areas through the use of elevators and ramps. *Id*. at ¶ 28.

---

[1] The Court notes that Defendants' Statement of Facts Not In Dispute contains two paragraphs numbered 25. For clarity, the Court will reference paragraph 25 with the notation (number one or number two).

Plaintiff's claim that he cannot negotiate the 1½ inch lift that separates his cell and the adjoining recreation pen correlates to plaintiff's claim that he was denied exercise. According to defendants, what plaintiff characterizes as a 1½ inch lift is actually a weatherstrip approximately ¾ of an inch high for the door that separates the cell from the adjoining recreation pen. Dkt. #25, ¶ 33. Contrary to plaintiff's allegations, the weatherstrip does not prevent a wheelchair bound individual from leaving his cell. *Id*. at ¶ 34. Rather, where an inmate may have problems traversing the weatherstrip going forward, a wheelchair can easily cross the weatherstrip going backwards. *Id*. at ¶ 35. In circumstances where an inmate, for disciplinary reasons, loses access to recreation, the inmates are not permitted to use the recreation yards at Five Points. *Id*. at ¶ 36. However, recreation is still available in the individual recreation areas connected to the inmate's cell. *Id*. at ¶ 37. Indeed, these recreation areas are available to all inmates housed at Five Points regardless of whether the inmate has lost his recreation privileges and regardless of whether the inmate is confined to a wheelchair. *Id*. at ¶ 38.

**Deprivation of Water and Electricity**

Plaintiff alleges that defendants McPherson and Thomas turned off the water and electricity to plaintiff's cell for twenty-two hours. Dkt. #1, ¶ 80. Specifically, plaintiff alleges,

> [o]n April 21, 2006, because plaintiff was repeatedly sleeping on his cell floor and under the bed, defendant McPherson directed defendant Thomas to turned [sic] off plaintiff's cell water and electricity as a form of punishment.

> Both of which stayed off for 22 uninterrupted hours until
> Sergeant Kazmarek, who did not know why the plaintiff's
> utility [sic] was [sic] turned off, turned them back on.
> Because the 22 hour water and electricity deprivation was
> not authorized by defendant Poole or his designee, plaintiff
> was deprived of the right to appeal said deprivation in
> accordance with DOCS policy.

Dkt. #1, ¶¶ 80-81.  In their motion for summary judgment, the defendants argue that

even assuming plaintiff's allegations are true, the allegations do not rise to the level of

an Eighth Amendment violation.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798

(W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute. The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Personal Involvement**

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the

violation and failed to remedy the wrong; (3) created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In the instant case, DOCS Commissioner Glenn S. Goord and Five Points Superintendent Thomas M. Poole are named by plaintiff as defendants. However, the complaint is devoid of any factual allegations to support a conclusion that either Commissioner Goord or Superintendent Poole had any involvement whatsoever in the incidents alleged in the complaint. Absent any evidence of personal involvement in any of the five means enumerated above, under no circumstances can Commissioner Goord or Superintendent Poole be held liable for damages pursuant to § 1983. Accordingly, the claims against Commissioner Goord and Superintendent Poole fail as a matter of law.

**Deliberate Indifference to Serious Medical Needs**

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution. 429 U.S. 97, 104 (1976). To establish an unconstitutional

denial of medical care that rises to the level of an Eighth Amendment violation, a plaintiff (prisoner) must prove, beyond mere conclusory allegations, that the defendant acted with "deliberate indifference to [his] serious medical needs."  *Estelle*, 429 U.S. at 104.  More specifically, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995).  Both the objective and subjective components must be satisfied in order for a plaintiff to prevail on his claim.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### Objective Component

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Id.*  Indeed, the Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).  "[I]n most cases, the actual medical consequences that flow

from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The types of conditions which have been held to meet the constitutional standard of serious medical need include:  the failure to treat a painful and disfiguring facial keloid,  *Brock v. Wright*, 315 F.3d 158, 160 (2d Cir. 2003); refusal to treat a cavity at risk of "acute infection[ ], debilitating pain and tooth loss" unless prisoner consented to extraction of another diseased tooth, *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000); untreated dental problems that resulted in chronic pain for a period of six months resulting in tooth degeneration, *Chance*, 143 F.3d. at 702; failure to treat a ruptured Achilles tendon which resulted in swelling and pain, *Hemmings*, 134 F.3d at 106-07; confiscation of prescription eyeglasses necessary to correct serious vision problem and subsequent denial of medical treatment resulting in loss of vision in one eye, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996); failure to remove broken hip pins from prisoner's hip for over three years despite prisoner's complaint of persistent pain, *Hathaway*, 37 F.3d at 64-65; and, loss of an ear where doctor threw away prisoner's ear and stitched up the stump, *Williams v. Vincent*, 508 F.2d 541, 543 (2d Cir. 1974).

**Subjective Component**

The subjective component for the establishment of a claim of deliberate indifference to a serious medical need requires that the plaintiff establish that the defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth Amendment's cruel and unusual punishment clause. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Thus, the

Supreme Court added,

> [a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 (stating "[s]o long as the treatment given

is adequate, the fact that a prisoner might prefer a different treatment does not give rise

to an Eighth Amendment violation"). Indeed, "it is well-established that mere

disagreement over the proper treatment does not create a constitutional claim. So long

as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at

703.

Here, plaintiff claims that defendants, OMH, DOCS, Carpinello, Sawyer,

Peppel, Marrone, Papontos, Goodman, Evans, Duke, Fisher, DeVitto, Goord, Poole,

Weingartner, and Gregoire, were deliberately indifferent to his serious medical needs in

violation of his rights pursuant to the Eighth Amendment to the United States

Constitution. Indeed, plaintiff's chief complaint is that Five Points did not comply with

the discharge summary prepared by the CNYPC on September 23, 2005,

recommending that plaintiff be transferred to a Level I mental health service facility and

requesting that plaintiff be placed in the ICP. Moreover, plaintiff complains that he did

not receive mental health treatment once he returned to Five Points in or about September 2005.  Plaintiff's claim that he did not receive proper mental health treatment following his return to Five Points on or after September 29, 2005 is belied by the extensive notations in his mental health records reflecting numerous evaluations and two weekly visits to the psychiatrist.  Indeed, annexed to the Declaration of William Goodman, M.D., a Psychiatrist employed by OMH at Five Points, are approximately 300 pages of mental health records detailing plaintiff's treatment for the period September 23, 2005 to September 25, 2006.

In sharp contrast to plaintiff's allegation that Five Points simply refused to comply with the recommendations and requests of CNYPC, defendants submit evidence in affidavit form which establishes that prior to plaintiff's release from CNYPC, the staff at Five Points and the staff at CNYPC participated in a telephone conference to discuss plaintiff's treatment plan.  Dkt. #25, ¶ 9.  Specifically, from Five Points, both DOCS and OMH personnel participated in the call, including the ICP Coordinator, a DOCS corrections counselor, a DOCS corrections sergeant, the OMH nurse administrator, the staff psychiatrist and the OMH Unit Chief.  *Id*.  During that telephone conference, the participants agreed that based on plaintiff's past history with the ICP and his functioning level, the ICP was not a realistic option for plaintiff.  *Id*. at ¶ 10.  Indeed, during a previous assignment to the ICP, plaintiff refused to be involved in the programming outside of the ICP unit in the general population and eventually, plaintiff would not participate in any of the ICP program activities.  *Id*. at ¶ 11.  Accordingly, it was agreed by and between the staff at Five Points and the staff at CNYPC that ICP

was not the appropriate fit for plaintiff.  *Id*. at ¶ 14.  As a result, plaintiff was placed in general population.  However, due to plaintiff's mental health status, plaintiff was not "double bunked" while at Five Points."  *Id*. at ¶ 17. As explained by defendants, "while Five Points is a Level I mental heath service facility based on its level of care and OMH staff assigned, general population is considered Level II since the inmates are generally double bunked, i.e. two inmates per cell. ... As such, the label of Level I versus Level II is meaningless in the case of plaintiff because he is receiving Level I care and because he does not have a cellmate."  Dkt. #26, p.8.

Where, as here, the prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment.  Rather, "[p]rison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates [and] courts have repeatedly held that a prisoner does not have the right to the treatment of his choice."  *Ross v. Kelly*, 784 F.Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.1992) (internal citations omitted).  Plaintiff's claim amounts to nothing more than a disagreement with the revised treatment plan agreed to by the staff at Five Points and the staff at CNYPC and the treatment he received while incarcerated at Five Points. Without more, plaintiff's disagreement with the medical treatment he received does not rise to the level of a violation of his Eighth Amendment rights.

Based on the record before this Court, plaintiff cannot satisfy either the objective or the subjective prong sufficiently to establish an Eighth Amendment

violation. Even assuming *arguendo* that plaintiff's alleged injuries do meet the objective component of an Eighth Amendment violation, the actions taken by defendants, OMH, DOCS, Carpinello, Sawyer, Peppel, Marrone, Papontos, Goodman, Evans, Duke, Fisher, DeVitto, Goord, Poole, Weingartner, and Gregoire, do not represent deliberate indifference to those injuries. Plaintiff's mental health records unequivocally establish that plaintiff was repeatedly evaluated and treated. Moreover, other than his own opinion, plaintiff has not submitted any evidence in admissible form to refute any of the evidence submitted by defendants in support of their motion for summary judgment. Plaintiff undeniably received the treatment agreed upon by the staff at Five Points and the staff at CNYPC. Moreover, plaintiff received intensive mental health treatment while housed in the general population and occupied a double bunk cell as a single inmate. Dkt. #25, ¶ 19.

In addition to receiving psychotropic medication to control his symptoms, plaintiff received one-on-one therapy from a psychiatrist twice a week. *Id*. at ¶ 20. Moreover, plaintiff was seen daily by the OMH nursing staff when medications were distributed. *Id*. at ¶ 21. As discussed above, when plaintiff's symptoms required acute care, plaintiff was placed in the RCTU at Five Points, a psychiatric housing unit that has several cells separate from the remaining Five Points' population. *Id*. at ¶ 22. There, patients can be observed 24 hours a day and are afforded more intensive psychiatric services which include daily evaluations by the psychiatrist and the primary therapist. *Id*. at ¶ 23. In the event of further, serious deterioration in plaintiff's mental health,

plaintiff could have been sent to CNYPS for more intensive care. *Id*. at ¶ 24. However, since plaintiff's September 2005 return to Five Points, such care at CNYPC has not been necessary. *Id*. Accordingly, plaintiff has failed to establish that an issue of fact exists requiring denial of summary judgment in favor of defendants.

**Conditions of Confinement Claims - Wheelchair Accessibility and Exercise**

Plaintiff's claims that Five Points is not wheelchair accessible and that he is being denied exercise/recreation are nothing more than claims that the conditions of his confinement violate the Eighth Amendment protection against cruel and unusual punishment. Plaintiff further claims that these same violations also run afoul of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

The Eighth Amendment prohibits cruel and unusual punishment that involves the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment to the United States Constitution imposes the duty on prison officials to provide humane conditions of confinement and officials must ensure that inmates receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In order to prevail on a claim of a violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective component. First, the deprivation must be, objectively and sufficiently serious so that "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. at 834, *citing Rhodes*, 452 U.S. at 347. The second component

requires that the prison official have a "sufficiently culpable state of mind."  *Id*.  In cases such as this, the state of mind is one of deliberate indifference to the health and safety of an inmate.  *Id*.

Conditions of confinement inflict cruel and unusual punishment when they result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society."  *Id*. With respect to the subjective component, a prison official will not be held liable for inhumane conditions, "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The Supreme Court of the United States adopted "subjective recklessness" as is used in criminal law as the test for "deliberate indifference" under the Eighth Amendment.  *Id.* at 839-40.

Here, plaintiff alleges that in general population, the cells are not built to accommodate the "physical need [sic] of prisoners with disabilities."  Dkt. #1, ¶ 83. Specifically, plaintiff alleges that "the cell gates are barely wide enough to allow access for the plaintiff's wheelchair" and that "plaintiff continue [sic] to suffer grate [sic] pane [sic] trying to navigate the wheelchair over the 1½ inch lift."  *Id*. at ¶ 84.  Moreover,

plaintiff claims that because he cannot manipulate his wheelchair over a 1½ inch lift that separates his cell from the adjoining recreation pen, he is being denied exercise/recreation because he is unable to access the recreation pen that adjoins his cell. As a threshold matter, Five Points was opened in 2000 and at the time, it was brand new and in compliance with all applicable building codes including the Americans with Disabilities Act Accessibility Guidelines. Dkt. #25, ¶ 25 (number one). As an ADA compliant facility, there are cells designed and designated for wheelchair accessibility. Dkt. #25, ¶ 25 (number two). Indeed, the wheelchair accessible cells have wider doors for wheelchairs, modified showers in the cell for handicap accessibility, a wheelchair accessible desk and cabinet space and wheelchair accessible toilets and sinks. *Id*. at ¶ 26. At the time of the filing of the instant motion, the plaintiff was being housed in a wheelchair accessible cell. *Id*. at ¶ 27.

With respect to what plaintiff characterizes as a 1½ inch lift separating his cell from the adjoining recreation pen, plaintiff alleges that rather than removing the 1½ inch lift, defendants Weingartner and Gregoire advised plaintiff to enter and leave the cell by rolling his wheelchair backwards through the cell door. Dkt. #1, ¶ 85. Plaintiff further claims that his March 15, 2006 request for a reasonable accommodation, *to wit*, to have the 1½ inch lift removed from the cell entrance or to be moved to a cell on the first floor, was denied. *Id*. at ¶ 86. Similarly, plaintiff alleges that his grievance was denied by both the IGRC and CORC with the instruction that plaintiff should get pain medication from the Medical Department. *Id*. What plaintiff characterizes as a 1½ inch lift is actually a weatherstrip approximately ¾ of an inch high for the door that separates

the cell from the adjoining recreation pen.  Dkt. #25, ¶ 33.  Contrary to plaintiff's

allegations, the weatherstrip does not prevent a wheelchair bound individual from

leaving his cell.  *Id*. at ¶ 34.  Rather, where an inmate may have problems traversing the

weatherstrip going forward, a wheelchair can easily cross the weatherstrip going

backwards.  *Id*. at ¶ 35.  In circumstances where an inmate, for disciplinary reasons,

loses access to recreation, the inmates are not permitted to use the recreation yards at

Five Points.  *Id*. at ¶ 36.  However, recreation is still available in the individual recreation

areas connected to the inmate's cell.  *Id*. at ¶ 37.  Indeed, these recreation areas are

available to all inmates housed at Five Points regardless of whether the inmate has lost

his recreation privileges and regardless of whether the inmate is confined to a

wheelchair.  *Id*. at ¶ 38.


The record before this Court simply does not support a claim for a

violation of the Eighth Amendment based on the conditions of plaintiff's confinement.

With respect to the objective component, even assuming *arguendo* that plaintiff's

allegations are true, those allegations are not sufficiently serious so as to result in the

denial of "the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511

U.S. 825, 834 (1994).  Moreover, the record before this Court is devoid of any evidence

in admissible form to support a conclusion that the defendants acted with the requisite

state of mind, deliberate indifference to the health and safety of the plaintiff.

Accordingly, defendants' motion for summary judgment on plaintiff's conditions of

confinement claim is granted.

## Conditions of Confinement Claim - Water and Electricity

As discussed above, in order to prevail on a claim of a violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective component. First, the deprivation must be, objectively and sufficiently serious so that "a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second component requires that the prison official have a "sufficiently culpable state of mind." *Id*. In cases such as this, the state of mind is one of deliberate indifference to the health and safety of an inmate. *Id*. Plaintiff alleges that defendants McPherson and Thomas turned off the water and electricity in plaintiff's cell for twenty-two hours. Specifically, plaintiff claims, "defendant McPherson directed Thomas to turned [sic] off plaintiff's cell water and electricity as a form of punishment. Both of which stayed off for 22 uninterrupted hours until Sergeant Kazmarek, who did not know why the plaintiff's utility was turned off, turned them back on." Dkt. #1, ¶ 80. Even assuming *arguendo* that plaintiff's allegations are true, these allegations simply do not rise to the level of an Eighth Amendment violation.

Conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Where, as here, conditions of confinement do not result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities," the United States

Supreme Court has held that such deprivations do not rise to the level of a violation of the Eighth Amendment. Indeed, courts within the Second Circuit have routinely held that the type of deprivations at issue here, no access to water and electricity for twenty-two hours, do not constitute an Eighth Amendment violation. *See e.g.*, *McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (totality of conditions in restrictive housing unit, including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet papers for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions, while not pleasant, did not rise to the level of Eighth Amendment violation); *Fisher v. Department of Correction*, No. 92 Civ. 6037 (LAP), 1995 WL 608379, at *5 (S.D.N.Y. Oct. 16, 1995) (prison's failure to provide inmate with toothpaste and soap for eight consecutive days, lighting for twenty days, and hot food 65 percent of the time did not rise to the level of Eighth Amendment violation); *Gill v. Riddick*, No. 9:03-CV-1456, 2005 WL 755745, *16 (N.D.N.Y. Mar. 31, 2005) ("the temporary deprivation of the right to use the toilet, in the absence of serious physical harm or serious risk of contamination, does not rise to the level of an Eighth Amendment violation."); *but see, Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995) (stating, "[u]nder contemporary standards of decency, a jury could justifiably consider incarceration of a naked prisoner for several days in a dark, stuffy, feces-smeared mental observation cell, without any personal amenities, following a violent assault at the hand of corrections officers to be an additional trauma inflicted without penological justification, and thus in violation of Blissett's Eighth Amendment right to be

free from cruel and unusual conditions of confinement)[2]; *see also, Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir.1999) (recognizing that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment"); *Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir. 2001) (prisoner who was temporarily denied access to a "working toilet" did not suffer deprivation of "minimized civilized measure of life's necessities").

Although the twenty-two hours about which plaintiff complains may have been restrictive or even harsh, those conditions do not rise to the level of an Eighth Amendment violation.  Accordingly, plaintiff's claim of an Eighth Amendment violation because he was deprived of water and electricity for twenty-two hours fails as a matter of law.

**Americans with Disabilities Act and Rehabilitation Act Claims**

In his Decision and Order wherein he permitted plaintiff's Eighth Amendment and Americans with Disabilities Act and Rehabilitation Act claims to

---

[2] In so holding, the Second Circuit in *Blissett* cited, *"Hoptowit v. Ray*, 682 F.2d 1237, 1257-58 (9th Cir.1982) ("The deprivation of nearly all fresh air and light, particularly when coupled with [lack of control over artificial illumination], creates an extreme hazard to the physical and mental well-being of the prisoner" in violation of Eighth Amendment); *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir.1981) (deprivation of adequate clothing and bedding bearing "no relationship whatever to any security measure" amounts to "an unnecessary infliction of pain" to prisoner held in isolation and permitted only underwear and a mattress); *McCray v. Burrell*, 516 F.2d 357, 369 (4th Cir.1975) (confinement of nude prisoner in barren isolation cell without any personal articles for twenty-four hours), *cert. dismissed*, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976)."

proceed, United States District Judge John T. Curtin specifically stated, "[a]ccordingly, since the plaintiff herein bases his ADA and Rehabilitation Act claims on the same factual allegations which support his Eighth Amendment claim, the Court concludes that his ADA and Rehabilitation Act claims against defendants OMH and DOCS and the individual defendants in their official capacity may go forward."  Dkt. #3, p.8.  Following Judge Curtin's reasoning, as well as the cases cited in his Decision and Order, *to wit*: *DeGrafinreid v. Ricks*, 417 F.Supp.2d 403 (S.D.N.Y. 2006) (denying motion to dismiss inmate's ADA official-capacity claims for monetary damages against state correctional officials where complaint stated a claim for an Eighth Amendment violation); *Lamzot v. Phillips*, No. 04 Civ. 6719 (LAK), 2006 WL 686578, at *30 (S.D.N.Y. Mar. 16, 2006) (denying motion to dismiss inmate's ADA and Section 504 official capacity claims for monetary damages where complaint stated a claim for Eighth Amendment violation), this Court finds that because plaintiff's Eighth Amendment claims fail as a matter of law, so too must his ADA and Rehabilitation Act claims.

**Qualified Immunity**

Because this Court has concluded that defendants are entitled to summary judgment on all plaintiff's claims on other grounds, this Court need not address defendants' qualified immunity argument.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (Dkt. #24) is granted.  By reason of the foregoing, plaintiff's request for a preliminary injunction (Dkt. ## 1, 7 and 18) is denied.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED:     Buffalo, New York
           May 3, 2010

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**